Opinion issued May 19, 2022



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-20-00368-CV

———————————

**RAMEY & SCHWALLER, LLP, Appellant**

**V.**

**THE DOCUMENT GROUP, INC., Appellee**

On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Case No. 2018-04560

## MEMORANDUM OPINION

Appellee The Document Group, Inc. (TDG) sued appellant law firm Ramey & Schwaller, LLP for breach of contract. TDG alleged that it provided goods and services to Ramey & Schwaller and that the firm failed to pay eight invoices for such services, resulting in $8,980.27 in unpaid services. Ramey & Schwaller

denied owing the money, arguing in relevant part that it acted as an agent for its client. TDG amended its pleadings to add a cause of action under the Declaratory Judgments Act (DJA), seeking a declaration of its rights under the contracts as represented in the invoices and particularly seeking a declaration that Ramey & Schwaller did not disclose that it was acting as an agent for its client. TDG also sought attorney's fees pursuant to the DJA. A jury found in TDG's favor, and the trial court rendered judgment on the verdict, awarding TDG $8,980.27 in actual damages, plus pre- and post-judgment interest and $90,000 in trial-level attorney's fees under the DJA.

Ramey & Schwaller appeals, arguing in multiple issues that the trial court erred in awarding TDG $90,000 in attorney's fees because those fees were not recoverable, or alternatively, were unreasonable, not supported by the evidence, and not properly segregated. Ramey & Schwaller further argued that the trial court erred in excluding evidence that its client eventually paid the invoices that formed the basis of this suit; the trial court erred "in calling parties for trial when Ramey & Schwaller, LLP pled in its Third Amended Verified Answer and the evidence showed that the unpaid invoices were paid prior to the start of the trial"; the trial court erred "in requiring full disclosure" of the client's name; and Ramey & Schwaller was itself entitled to attorney's fees incurred after its Rule 167 settlement offers to TDG.

2

Because we agree with Ramey & Schwaller that attorney's fees were not recoverable for TDG's claim under the DJA, we modify the judgment to delete the award of attorney's fees and affirm the judgment as modified.

**Background**

Ramey & Schwaller contracted with TDG for document management services. Between January and March 2017, TDG issued eight invoices to Ramey & Schwaller for a total of $8,980.27 in goods and services. TDG asserted that Ramey & Schwaller accepted the goods and services but failed to pay the invoices.

On January 23, 2018, TDG filed its original petition alleging a breach of contract claim and a suit on a sworn account against Ramey & Schwaller based on the unpaid invoices. Ramey & Schwaller answered, denying that it owed TDG any money. It further asserted, "While not agreeing that [Ramey & Schwaller] owes [TDG] any money, [Ramey & Schwaller] specifically informed [TDG] that any goods or services provided by [TDG] were not for [Ramey & Schwaller] but rather its clients and that the clients were responsible for payment of the goods and services delivered." It stated that "proper defendant parties include Azita DiMarco, aka Azita Erfani ("Erfani"), Global Equity Management (S.A.) Pty. Ltd. ("GEMSA"), and Rick Mushinski ("Mushinski")."

Ramey & Shwaller also filed a counterclaim against TDG for unfair debt collection, and it filed a third-party petition against GEMSA, Erfani, and

3

Mushinski. It alleged that GEMSA was the client on whose behalf Ramey & Schwaller ordered services from TDG, and it asserted that Erfani and Mushinski were individuals who interfered with the contract between it and GEMSA. Ramey & Schwaller asserted that GEMSA, Erfani, and Mushinski were the parties liable for any unpaid debt to TDG.

Months of litigation ensued, with multiple motions for summary judgment filed by various parties and at least one attempt at mediation. On June 27, 2019, Ramey & Schwaller made a settlement offer to TDG pursuant to Rule of Civil Procedure 167 and Civil Practice and Remedies Code Chapter 42, which allow the shifting of some litigation costs following settlement offers that conform to the procedural rules and statutory requirements. *See* TEX. CIV. PRAC. & REM. CODE § 42.001–.005; TEX. R. CIV. P. 167.1–167.7. Ramey & Schwaller offered TDG $8,000 "to settle all monetary claims—including any attorney's fees, interest, and costs—between the parties."

TDG filed an amended petition on July 17, 2019, in which it continued to assert claims for breach of contract and suit on a sworn account. TDG added a claim pursuant to the DJA, citing the same facts relevant to its breach of contract claim—i.e., its assertion that it issued eight invoices to Ramey & Schwaller that went unpaid. TDG challenged the assertions from Ramey & Schwaller's answer, in which the firm disputed "that it is liable under the invoices [and] contend[ed] that

4

its client, GEMSA was a disclosed principal for which [Ramey & Schwaller], as agent, sought goods and services." TDG therefore sought, "pursuant to Section 37.004 of the Texas Civil Practice and Remedies Code, a determination of its rights, status and legal relations to [Ramey & Schwaller] arising from these contracts." TDG sought a declaration that "GEMSA is not a disclosed principal in the subject contract so to absolve Ramey of liability for the contract amount." TDG likewise sought attorney's fees and costs associated with prosecuting its claim against Ramey & Schwaller.

On November 18, 2019, Ramey & Schwaller made a second settlement offer pursuant to Civil Practice and Remedies Code Chapter 42 and Rule 167. It offered TDG $15,000 to settle all monetary claims between the parties.

Ramey & Schwaller filed an amended answer on February 12, 2020. It continued to assert that it had "specifically informed TDG that payments [on the invoices] were not [Ramey & Schwaller's] responsibility but rather were the responsibility of the [Ramey & Schwaller's] clients, who TDG knew [Ramey & Schwaller] was representing." Ramey & Schwaller denied that it had any contractual obligation to TDG because the firm "was acting as attorney (i.e., agent) for clients (i.e., [Ramey & Schwaller's] principals) that TDG knew [Ramey & Schwaller] was representing." Ramey & Schwaller denied that it owed any money to TDG and asserted that Erfani was a proper third-party defendant. It indicated

5

that it had settled its third-party claims against Erfani and that, as part of its agreement, Erfani made a payment to TDG for $8,980.27—the full amount owed on the unpaid invoices.

The case then proceeded to trial between TDG and Ramey & Schwaller. The jury found that "[b]efore Ramey & Schwaller, LLP placed any of the orders," it did not "disclose to The Document Group, Inc. that it was ordering the goods and services as an attorney acting in a representative capacity" and that TDG did not "know or have reasonable grounds to know that Ramey & Schwaller, LLP was ordering the goods and services as an attorney acting in a representative capacity." The jury further found that Ramey & Schwaller failed to disclose to TDG "that its client's full name was Global Equity Management (S.A.) Pty. Ltd." The jury found that Ramey & Schwaller "expressly or impliedly assume[d] liability to pay [TDG] for the goods and services it ordered." Finally, the jury made findings regarding the amount of TDG's reasonable and necessary attorney's fees, determining in relevant part that reasonable fees for TDG's representation through trial totaled $90,000.

The trial court rendered judgment based on the jury's verdict in favor of TDG against Ramey & Schwaller. The trial court's final judgment included findings that Ramey & Schwaller placed orders for the goods and services provided by TDG, that it accepted the goods and services and was invoiced for them, but it failed to make the payments on the invoiced amounts. The trial court

6

found that TDG suffered damages of $8,980.27. The trial court also found and declared that "Ramey did not disclose [GEMSA] [a]s its principal in the (8) contracts between The Document Group and Ramey" and that "Ramey either impliedly or expressly assumed liability for the eight (8) contracts at issue with [TDG]." The trial court awarded TDG its actual damages of $8,980.27, plus pre- and post-judgment interest and costs. It also awarded TDG $90,000 in trial level attorney's fees plus contingent attorney's fees for subsequent appeals pursuant the DJA. Finally, the trial court credited Ramey & Schwaller with the payment Erfani made to TDG of $8,980.27.

## TDG's Attorney's Fees

Ramey & Schwaller asserts in its first issue that the trial court erred in awarding TDG attorney's fees. It asserts that fees were not available to TDG based on the terms of the alleged contract, nor did Civil Practice and Remedies Code Chapter 38 permit the recovery of fees against an LLP like Ramey & Schwaller.[1] Furthermore, Ramey & Schwaller argues that the trial court's award of attorney's

---

[1] The legislature amended Civil Practice and Remedies Code section 38.001 effective September 1, 2021, to permit recovery of attorney's fees from an individual or "organization," as defined by Business Organizations Code section 1.002. *See* Act of May 28, 2021, 87th Leg., R.S., ch. 665, § 1, 2021 Tex. Sess. Law Serv. (West) (to be codified at TEX. CIV. PRAC. & REM. CODE § 38.001). This suit was filed prior to that amendment taking effect, and so we apply the version that was in effect when this action was commenced. *See id.* § 2 (amendment applies to award of attorney's fees in action commenced on or after effective date of September 1, 2021).

fees under the DJA was improper because TDG's declaratory judgment claim merely duplicated its breach of contract claim for which attorney's fees were not available. TDG agrees that attorney's fees were not awarded on its breach of contract claim and were, instead, awarded pursuant to the DJA, which it alleges was proper under the facts of this case.

Under the DJA, a court "may award . . . reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE § 37.009. However, "a party cannot use the [DJA] as a vehicle to obtain otherwise impermissible attorney's fees." *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009). The supreme court explained:

> [W]hen a claim for declaratory relief is merely tacked onto a standard suit based on a matured breach of contract, allowing fees under Chapter 37 would frustrate the limits Chapter 38 imposes on such fee recoveries. And granting fees under Chapter 37 when they are not permitted under the specific common-law or statutory claims involved would violate the rule that specific provisions should prevail over general ones. While the Legislature intended the Act to be remedial, it did not intend to supplant all other statutes and remedies.

*Id.* at 670 (internal citations omitted). Thus, "when a party has a claim for which fees are unavailable, in addition to a claim for declaratory relief, the declaratory relief claim must do 'more than merely duplicate the issues' being litigated by the claims for which fees are unavailable." *Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 268 (Tex. 2021) (quoting *MBM Fin.*, 292 S.W.3d at 670). "If it does not, fees are

8

also unavailable under [the DJA]." *Id.*; *see Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624–25 (Tex. 2011) (per curiam).

TDG's original petition alleged causes of action for breach of contract and suit on a sworn account based on eight unpaid invoices for goods and services sent to Ramey & Schwaller. TDG alleged that the invoices constituted contracts between the parties, that TDG had performed by providing the requested goods and services—which were accepted by Ramey & Schwaller—and that Ramey & Schwaller breached the agreements by failing to pay the invoices.

Ramey & Schwaller's answer denied liability on the contracts, based in part on its assertion that "any goods or services provided by [TDG] were not for [Ramey & Schwaller] but rather its clients [GEMSA] and that the clients were responsible for payment of the goods and services delivered." Ramey & Schwaller identified Erfani, Mushinski, and GEMSA as the proper defendants and filed a third-party petition against them. Ramey & Schwaller eventually amended its answer to assert that it was acting as the agent for its principal, GEMSA.[2] In

---

[2] TDG contends that Ramey & Schwaller failed to adequately plead its agency affirmative defense. We disagree. Texas follows a fair-notice standard for pleadings, which requires courts to consider whether the opposing party "can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017). Stated another way, the fair-notice standard examines "whether the pleadings have provided the opposing party sufficient information to enable that party to prepare a defense or a response." *Id.* at 224–25. Here, Ramey & Schwaller's original answer asserted that it was not the

answer to this agency defense, TDG sought a declaratory judgment of its rights under the invoices, specifically seeking a declaration that "GEMSA is not a disclosed principal in the subject contract so to absolve Ramey of liability for the contract amount."

Thus, based on the pleadings and the evidence adduced at trial, TDG had a mature breach of contract claim against Ramey & Schwaller for failure to pay for the invoiced goods and services. TDG's amended petition seeking a declaration of its rights under those same contracts and on Ramey & Schwaller's affirmative defense to liability under those contracts merely duplicated issues already being litigated in TDG's breach of contract claim, for which attorney's fees were not available. Because TDG's requested relief pursuant to the DJA did not do more than merely duplicate issues already being litigated, TDG's fees are also unavailable under the DJA. *See Irwin*, 627 S.W.3d at 268; *Etan Indus., Inc.*, 359 S.W.3d at 624–25.

TDG argues that its declaratory judgment claim did not merely recast its breach of contract claim because Ramey & Schwaller used the agency defense to

<div style="border-top: 1px solid;"></div>

party liable under the contracts and stated that it was acting on behalf of its client, GEMSA. Although the pleadings did not specifically label these allegations as an affirmative defense based on a disclosed agency, the pleadings nevertheless provided sufficient information to inform TDG of the basic nature of the controversy and to prepare a response to Ramey & Schwaller's assertions. *See id.* at 242–25; *Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) (courts look to substance of motion or pleading rather than its form or caption to determine its nature).

avoid liability for the contracts it had made with TDG, and thus TDG sought a declaration of the parties' rights under the contract and a declaration that GEMSA was not a disclosed principal of Ramey & Schwaller's. TDG argues that the jury's answers allowed the trial court to declare that GEMSA was not a disclosed principal and, thus, dispose of Ramey & Schwaller's affirmative defense. But the affirmative defense asserted in response to TDG's breach of contract claim did not require a filing of the declaratory judgment claim to resolve; rather, the agency issue was subsumed within the litigation on the breach of contract claim.

TDG nevertheless argues that it could have "sued Ramey solely under the [DJA] for a determination of [its] agency defense and assumption of liability and recovered attorney's fees for the prosecution of that case. Then, TDG could have brought a separate action to enforce its breach of contract claim, having disposed of Ramey's defenses through the declarations." It refers to this strategy as a "procedural two-step" that is "often employed in the uninsured/underinsured motorist claim context," and TDG argues that it should therefore be able to recover attorney's fees here. TDG cites *Potter v. Clear Channel Outdoor, Inc.*, No. 01-07-00578-CV, 2009 WL 1886168 (Tex. App.—Houston [1st Dist.] July 2, 2009, no pet.) (mem. op.).

In *Potter*, the parties' conflict arose over the construction of various lease agreements in which Potter leased land to Clear Channel for the placement of

billboard advertisements. 2009 WL 1886168, at *1. After the leases expired and the parties failed to come to an agreement to extend the leases, the parties disagreed regarding Potter's contractual right to buy the billboard structures. *Id.* When Clear Channel denied that the contractual right to purchase the structures applied and indicated that it would remove the structures from the previously-leased land, Potter filed suit, seeking in part a declaratory judgment that he was entitled to exercise his right to purchase the sign structures under the terms of the leases. *Id.* at *1–2.

*Potter* is distinguishable from this case. Nothing in the *Potter* opinion addressed the issue relevant here—i.e., whether the suit was brought as a declaratory judgment claim rather than a breach of contract claim for the sole purpose of obtaining attorney's fees. No attorney's fees were awarded in the trial court because Potter did not prevail on his declaratory judgment act claim at trial, and this Court, after reversing the judgment of the trial court and holding in Potter's favor, remanded for the trial court to consider his claim for attorney's fees. *Id.* at *8.

TDG also relies on *Irwin*, in which the Supreme Court of Texas addressed the availability of attorney's fees under the DJA in a suit to establish rights to Uninsured Motorist/Under-insured Motorist (UIM) benefits under an insurance contract. 627 S.W.3d at 267–68. The supreme court recognized the unique

character of UIM claims, which condition benefits on the insured's legal entitlement to receive damages from a third party. *Id.* at 268 (citing *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006) (recognizing "unique" nature of UIM claims and holding that attorney's fees were not available to insured under Chapter 38 because claim for UIM coverage could not have been properly "presented" to insurer pursuant to section 38.002 because contractual liability did not exist "until the trial court signs a judgment establishing the negligence and underinsured status of the other motorist")).

Irwin argued that, when Allstate failed to make a reasonable adjustment of his UIM claim, his only recourse was to sue under the DJA because he could not sue Allstate directly for the underlying tort, nor could he sue for breach of contract because no breach had occurred. *Id.* Thus, he asserted, he was entitled to attorney's fees under the DJA. *Id.* Allstate argued, on the other hand, that award of attorney's fees in connection with the UIM claim was contrary to *Brainard* and *MBM Financial*. *Id.* Allstate argued that "because Irwin cannot recover his Chapter 38 attorney's fees for breach of contract under *Brainard*, he likewise should not be able to recover his Chapter 37 attorney's fees per [the] ruling in *MBM Financial*." *Id.* The supreme court disagreed with Allstate and stated, "The rule Allstate invokes, however, does not match the circumstances here because Irwin seeks a

declaration of rights under the UIM contract prior to the existence of any breach or claim for attorney's fees under Chapter 38." *Id.*

The *Irwin* court reaffirmed the general principle set out in *MBM Financial*— that a party "could not use the [DJA] as a means to obtain attorney's fees it would not otherwise be entitled to recover"—and thus, "when a party has a claim for which fees are unavailable, in addition to a claim for declaratory relief, the declaratory relief claim must do 'more than merely duplicate the issues' being litigated by the claims for which fees are unavailable." *Id.* (citing *MBM Fin.*, 292 S.W.3d at 669–70). The court distinguished the rule from *MBM Financial*, however, by observing that Irwin did not have a claim for breach of contract, and so "his request for declaratory relief does not merely duplicate that claim":

> Irwin has not merely tacked this request "onto a standard suit based on a matured breach of contract." *MBM Fin.*, 292 S.W.3d at 670. The circumstances here are different from those in *MBM Financial* because, according to *Brainard*, no breach-of-contract claim had matured on which to join a request for declaratory relief. Instead, what Irwin sought to establish through his request for declaratory relief were the prerequisites for, and existence of, a UIM claim under the policy. Irwin's declaratory judgment action therefore does not "merely duplicate[] issues already before the trial court." *Id.* at 671.

*Id.* at 269.

The court in *Irwin* ultimately concluded that a declaratory judgment was the proper vehicle for resolving the coverage dispute between Irwin and Allstate and that, "[b]ecause Chapter 37 provides for the award of attorney's fees, and the

UDJA has not been invoked simply to replicate issues already before the court that might implicate Chapter 38, the award of attorney's fees [to Irwin] is not erroneous." *Id.* at 270, 272.

*Irwin* is factually distinguishable from this case. The court in *Irwin* relied on the unique nature of UIM claims and expressly stated that Irwin had no matured breach of contract claim at the time he sought declaratory relief. *See id.* at 269. Here, by contrast, TDG had filed a matured breach of contract claim, and its declaratory judgment sought to resolve issues relative to that claim. TDG was not required to use the DJA to resolve any aspect of the conflict between the parties because all issues surrounding Ramey & Schwaller's liability on the contracts— including the defensive issues raised by Ramey & Schwaller—were already presented to the trial court through TDG's breach of contract claim and Ramey & Schwaller's answer to that claim.

TDG also cites cases such as *Nabers v. Nabers*, No. 14-18-00968-CV, 2020 WL 830025 (Tex. App.—Houston [14th Dist.] Feb. 20, 2020, no pet.) (mem. op.), *Mooti v. Aldirawi*, No. 10-12-00161-CV, 2014 WL 2719916 (Tex. App.—Waco Jun. 12, 2014, pet. denied) (mem. op.), and *Roddy v. Holly Lake Ranch Association, Inc.*, 589 S.W.3d 336 (Tex. App.—Tyler 2019, no pet.), to support its contention that its declaratory judgment claim is not "merely duplicative" of its

breach of contract claim. These cases are all, likewise, distinguishable in that the DJA claims were separate and distinct from any breach of contract claim.

In *Nabers*, the court rejected the appellant's contention that the appellee "tacked on" her DJA claim to a breach of contract claim. 2020 WL 830025, at *3. The court observed that it was the appellant who filed a declaratory judgment claim, and appellee filed her answer seeking attorney's fees related to defending against that claim nearly two weeks before she filed her breach of contract claim. *Id.* The court reasoned:

> Unlike in *MBM*, the present case is not a situation where [the appellee] asserted a breach of contract claim, failed to recover on that claim, but sought attorney's fees under the UDJA for the fees incurred in pursuing the failed contract claim. In her answer, [the appellee] asserted the right to recover prevailing party attorney's fees incurred in having to defend [the appellant's] counterclaim for a declaration that the [parties' earlier mediated settlement agreement] was void.

*Id.* Here, by contrast, TDG filed its breach of contract claim first and then added a claim under the DJA, making this case more like *MBM Financial* than *Nabers*. *See id.*; *MBM Financial*, 292 S.W.3d at 670.

In *Mooti*, the Waco Court of Appeals determined that appellee Aldirawi's request for attorney's fees was distinguishable from the one in *MBM Financial* because "the attorney's fees awarded to Aldirawi in this case under chapter 37 of the Civil Practice and Remedies Code are not the same fees that he is prevented from recovering under chapter 38." 2014 WL 2719916, at * 6. And in *Roddy*, the

16

Tyler court likewise concluded that the appellee's declaratory judgment claim was not "part and parcel" of its breach of contract cause of action against the appellants. 589 S.W.3d at 346. The *Roddy* court analyzed the pleadings and stated, "[T]here is a distinction between [the appellee's] breach of contract cause of action, which addresses how Appellants' actions breached [certain deed] restrictions to the extent that such restrictions constituted a contractual agreement between them, . . . and its declaratory judgment action, which sought, among other reasons, to have the amendments to the deed restrictions declared void under the common law." *Id.* Here, by contrast, there is no material distinction between TDG's declaratory judgment claim—seeking a declaration of TDG's rights under the invoice contracts and a declaration resolving Ramey & Schwaller's agency defense to liability under those contracts—and TDG's breach of contract claim based on the same invoices.

We sustain Ramey & Schwaller's first issue asserting that the trial court erred in awarding attorney's fees to TDG. We modify the trial court's judgment to delete the award of attorney's fees. Because we have sustained Ramey & Schwaller's complaint regarding the award of attorney's fees on this basis, we need not address its remaining issues challenging the attorney's fees award.[3]

---

[3] Ramey & Schwaller numbered its issues differently in different sections of its brief. Based on the statement of issues presented, the issues relevant to the firm's

17

**Actual Damages**

Ramey & Schwaller asserts several additional issues relevant to the judgment against it on TDG's breach of contract claim.

**A.    Exclusion of Evidence that the Alleged Debt Was Paid Before Trial**

In its fourth issue, Ramey & Schwaller argues that the trial court erred in excluding evidence that the alleged debt was paid in full before trial. We review the trial court's evidentiary ruling for an abuse of discretion. *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020) (per curiam).

Ramey & Schwaller settled its third-party claim against Erfani, and as part of that agreement, Erfani paid TDG $8,980.27. However, nothing in the record indicated that TDG was a party to this settlement agreement or that it agreed to release its claims against Ramey & Schwaller in exchange for the payment from Erfani. At trial, Ramey & Schwaller made an offer of proof attempting to show

challenge to the award of attorney's fees include issues one, two, three, five, and six. In the remainder of its first issue, Ramey & Schwaller asserts numerous arguments regarding segregation of the fees and sufficiency of the evidence to support the amount awarded. In its second issue, Ramey & Schwaller asserts that the trial court erred in submitting the issue of attorney's fees to the jury. In its third issue, the firm asserts that the trial court erred in denying various motions, including a motion for summary judgment, motion in limine, motion for judgment as a matter of law, motion for judgment notwithstanding the verdict and motion for new trial, all of which asserted that TDG was not entitled to its attorney's fees. In its fifth issue, Ramey & Schwaller asserts that the trial court erred in denying its proposed jury charge that did not include questions on attorney's fees. In its sixth issue, it argues that the trial court erred in awarding attorney's fees based on the jury's verdict. None of these issues will grant Ramey & Schwaller any greater relief than will our resolution of its first issue. *See* TEX. R. APP. P. 47.1.

that the eight invoices from TDG were paid by GEMSA, and the trial court excluded the evidence.

Ramey & Schwaller argues that Erfani's payment was "evidence that GEMSA was the responsible party of the payment," and it asserts, "Had the jury known that [Ramey & Schwaller's] former client GEMSA paid TDG the alleged debt, the jury likely would have determined that [Ramey & Schwaller] did in fact disclose that GEMSA was the party responsible for the payment."

These arguments, however, require assumptions that are not supported by the evidence. Ramey & Schwaller's settlement with third-party defendants Erfani and/or GEMSA does not, by itself, demonstrate that TDG had knowledge of the relationship between Ramey & Schwaller and GEMSA. Nor is the nature of the relationship between Ramey & Schwaller and its client necessarily relevant to whether the firm properly disclosed its relationship with GEMSA to TDG. Thus, the trial court could have concluded that evidence of the settlement between Erfani and Ramey & Schwaller did not have any probative value regarding the question being litigated during trial—that of Ramey & Schwaller's own liability to TDG on the contracts. *See* TEX. R. EVID. 401 (evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action"), 402 (irrelevant evidence is

inadmissible). We cannot say that the trial court abused its discretion in excluding evidence of Erfani's settlement payment.[4] *See Fleming*, 610 S.W.3d at 21.

We overrule Ramey & Schwaller's fourth issue.

## B. Jury Charge on Disclosure of GEMSA's Full Name

In its ninth issue, Ramey & Schwaller argue that the trial court erred by requiring it to prove that it disclosed the full name of its principal, GEMSA. It argues that the trial court required that it "prove that it disclosed more than required by law" by providing a jury charge that "required proof of [disclosure of] 'Global Equity Management (SA) Pty. Ltd.' rather than GEMSA." Ramey & Schwaller argues, "There is proof that TDG knew R&S was working for a client in representative capacity and that R&S disclosed beyond any question the identity of the client as GEMSA. TDG was on notice to further investigate the client for which R&S was working for under the contracts."

Ramey & Schwaller asserted that it was not liable on the contracts with TDG because it entered into them in a representative capacity on behalf of its client,

---

[4]     As part of its fourth issue, Ramey & Schwaller also cites the one satisfaction rule. *See Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 106 (Tex. 2018) ("Under the one satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered."). We first observe that, although the trial court did not allow the jury to hear evidence of the payment from Erfani to TDG as part of Erfani's settlement with Ramey & Schwaller, the trial court did grant the firm an offset for the amount paid by Erfani. To the extent that Ramey & Schwaller argues that the one satisfaction rule precluded TDG from recovering attorney's fees, we note that we have already held on other grounds that TDG was not entitled to its attorney's fees, and so we need not address this argument.

20

GEMSA. Texas law does not presume agency. *Wright Group Architects–Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 200 (Tex. App.—Dallas 2011, no pet.). "When an agent seeks to avoid personal liability on a contract he signs, it is his duty to disclose that he is acting in a representative capacity and the identity of his principal." *Id.*; *see Latch v. Gratty, Inc.*, 107 S.W.3d 543, 546 (Tex. 2003) (per curiam). If the party asserting the defense of agency fails to prove that it made these disclosures, it may be held liable on the contract. *See Pierce*, 343 S.W.3d at 200.

The jury charge here asked the jury three questions relevant to Ramey & Schwaller's affirmative defense of agency. Question 1 asked, "Before Ramey & Schwaller, LLP placed any of the orders, did Ramey & Schwaller, LLP disclose to The Document Group, Inc. that it was ordering the goods and services as an attorney acting in a representative capacity?" The jury answered, "No." Question 2 asked, "Before Ramey & Schwaller, LLP placed any of the orders, did The Document Group, Inc. know or have reasonable grounds to know that Ramey & Schwaller, LLP was ordering the goods and services as an attorney acting in a representative capacity?" The jury answered, "No." Question 3 asked, "Before Ramey & Schwaller, LLP placed any of the orders, did Ramey & Schwaller, LLP disclose to The Document Group, Inc. that its client's full name was Global Equity Management (S.A.) Pty. Ltd.?" The jury answered, "No."

21

"A trial court has considerable discretion to determine proper jury instructions, and we review a trial court's decision to submit or refuse a particular instruction for an abuse of discretion." *Gunn v. McCoy*, 554 S.W.3d 645, 675 (Tex. 2018). "[W]e do not reverse a judgment based on charge error unless the error probably caused the rendition of an improper judgment or prevented the petitioner from properly presenting the case to the appellate courts." *Id.*

Assuming without deciding that the trial court erred in its submission of Question 3 by asking whether Ramey & Schwaller disclosed the full name of its purported principal, the firm cannot show any harm. "Error in the submission of an issue generally is deemed to be harmless when the findings of the jury in answer to other issues are sufficient to support the judgment." *Hatfield v. Solomon*, 316 S.W.3d 50, 63 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 750 (Tex. 1980)). Here, the first two jury findings established that Ramey & Schwaller did not adequately disclose that it was acting in a representative capacity without reference to the specific name of its principal, GEMSA. *See Pierce*, 343 S.W.3d at 200 (stating that party asserting agency as affirmative defense must prove that it disclosed that it was acting in representative capacity and identity of its principal). Thus, the answers to Questions 1 and 2 supported the trial court's judgment denying Ramey & Schwaller's affirmative defense of agency and holding the firm liable for breach of

22

contract. *See id.* (holding that, if party asserting affirmative defense of agency failed to prove it made required disclosures, it can be held liable on contract); *see also Hatfield*, 316 S.W.3d at 63 (discussing harmless error in jury charges).

We overrule Ramey & Schwaller's ninth issue.

**Ramey & Schwaller's Litigation Expenses**

Finally, in its eighth issue, Ramey & Schwaller argues that, pursuant to Rule of Civil Procedure 167, it is owed its own litigation expenses after its June 27, 2019 and/or November 18, 2019 settlement offers. TDG argues that Ramey & Schwaller is not entitled to litigation expenses because, among other reasons, it raised this issue for the first time on appeal.

Civil Practice and Remedies Code chapter 42 and Rule of Civil Procedure 167 provide that if a settlement offer made in accordance with the rule and statute is rejected and the judgment awarded at trial is significantly less favorable than the offer, then the court must award litigation costs to the party that made the offer. *See* TEX. R. CIV. P. 167.4(a); TEX. CIV. PRAC. & REM. CODE §§ 42.001–.005.

Although Ramey & Schwaller filed documentation regarding its two settlement offers as appendices to its Amended Motion for Entry of Judgment, Ramey & Schwaller did not ask the trial court to award its litigation costs pursuant Rule 167. Failure to present a claim in the trial court prevents the appellate court from considering that issue on appeal. *See* TEX. R. APP. P. 33.1(a) (requiring, as

condition for review, that party make objection in manner that calls trial court's attention to specific error alleged); *Breakwater Advance Mfg., LLC v. E. Tex. Machine Works, Inc.*, No. 12-19-00013-CV, 2020 WL 827139, at * 4 (Tex. App.—Tyler 2020, pet. denied) (mem. op.) (appellate court could not consider appellant's argument that trial court erred in sustaining appellee's objections to Rule 167 settlement offer because argument was not presented to trial court in motion for summary judgment); *Grocers Supply, Inc. v. Cabello*, 390 S.W.3d 707, 731 (Tex. App.—Dallas 2012, no pet.) (discussing requirements of Rule of Appellate Procedure 33.1 in context of complaint about trial court's failure to award litigation costs pursuant to Rule of Civil Procedure 167).

Ramey & Schwaller argues now that, "[b]ecause the Trial court improperly ruled against [it], the offers were never considered," and it asserts that if we determine "that the award of attorney's fees against Ramey & Schwaller was improper, then Ramey & Schwaller is entitled to its litigation expenses." It cites no support for this contention beyond a basic recitation of the statutory provisions and an erroneous statement that "[b]oth offers are more than TDG received, especially after GEMSA paid TDG for the unpaid invoices." We observe that the June 27, 2019 settlement offer of $8,000 was less than the actual damages awarded against Ramey & Schwaller on TDG's breach of contract claim. The fact that the award was later offset because of the payment Erfani made as part of her settlement with

24

Ramey & Schwaller does not change the fact that TDG was awarded more than Ramey & Schwaller offered on June 27, 2019. *See Bobo v. Varughese*, 507 S.W.3d 817, 828 (Tex. App.—Texarkana 2016, no pet.) (determining that calculation of whether "a judgment will be significantly less favorable" means "the damages awarded by the fact-finder, rather than the final judgment rendered by the trial court" and concluding that prejudgment interest should not be included in "the judgment" when comparing with Rule 167 settlement offer).

Furthermore, Ramey & Schwaller cites no authority to support its request for a remand on this issue, nor does its briefing provide any argument regarding whether an award of attorney's fees could properly be considered part of the "judgment" for Rule 167 purposes. *See id.* Thus, to the extent that Ramey & Schwaller is attempting to argue that it was not required to present this request to the trial court and could raise it for the first time on appeal, we conclude that Ramey & Schwaller has failed to adequately brief the issue. *See* TEX. R. APP. P. 38.1(i); *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (holding that requirements of Rule 38.1 are not met "by merely uttering brief conclusory statements, unsupported by legal citation"); *see also Lowry v. Tarbox*, 537 S.W.3d 599, 611–12, 620 (Tex. App.—San Antonio 2017, pet. denied) (appellants waived their sufficiency argument because their brief provided no argument or analysis

supporting their contention and thus afforded appellate court no basis to analyze and determine issue; failure to provide "a substantive analysis waives an appellate issue").

We overrule Ramey & Schwaller's eighth issue.

## Conclusion

We conclude that the trial court erred in awarding TDG attorney's fees pursuant to the DJA. Accordingly, we modify the trial court's judgment to delete the award of attorney's fees and affirm the judgment as modified.


Richard Hightower
Justice

Panel consists of Justices Landau, Hightower, and Rivas-Molloy.